**\*\* NOT FOR PUBLICATION \*\***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| ——————————————— | : | Civil Action No. 15-2851 (FLW) |
| UNDREAL DENISE LAWRENCE, | : | |
| | : | **OPINION** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CAROLYN W. COLVIN, | : | |
| Acting Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |
| ——————————————— | : | |

**WOLFSON, United States District Judge**:

Plaintiff Undreal Denise Lawrence ("Lawrence" or "Plaintiff"), appeals from the final decision of the Acting Commissioner of Social Security, Carolyn W. Covlin ("Defendant") denying Plaintiff disability benefits under Title II of the Social Security Act (the "Act") and supplemental security income under Title XVI of the Act.  After reviewing the Administrative Record, the Court finds that the Administrative Law Judge's ("ALJ") opinion was not based on substantial evidence and, accordingly, remands the decision for further consideration of Plaintiff's alleged anxiety disorder.

## I.       FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born on August 31, 1976, and was 32 years old on the alleged disability onset date of August 1, 2009.  A.R. 164 (hereinafter "A.R.").  Prior to her alleged disability, Plaintiff worked as cashier.  A.R. 202.

In July 15, 2011, Plaintiff applied for social security disability insurance benefits and supplemental security income, alleging disability beginning on August 1, 2009.  A.R. 164-74.

Plaintiff's claims were denied on October 21, 2011, *see* A.R. 52-73; 86-101, and again upon reconsideration on May 1, 2012. *See* A.R. 74-95; 103-08.

On June 12, 2012, Plaintiff requested a hearing, A.R. 111, which was held on July 15, 2013, before ALJ Barbara Dunn. A.R. 27-51. Plaintiff, who was represented by Robert Ryan, Esq., appeared and testified at the hearing, A.R. 28-48, and testimony was taken from Jackie Wilson, a vocational expert, A.R. 48-51. On September 13, 2013, the ALJ determined that Plaintiff was not disabled and issued a decision denying her claims for disability insurance benefits. A.R. 9-25. On November 13, 2015, Plaintiff requested review by the Appeals Council, A.R. 246, which was denied on February 15, 2014. A.R. 1-6. On April 22, 2015, Plaintiff filed the instant appeal.

### A.    Review of the Medical Evidence

Plaintiff's medical records begin in 2006,[1] when Plaintiff was evaluated by the "P Ex Op New Brunswick program" at the University of Medicine and Dentistry of New Jersey ("UMDNJ"), on July 7, 2006. A.R. 307-10. The UMDNJ report noted that Plaintiff had been referred by Social Services because she admitted "feeling very depressed and anxious for a long time." A.R. 308. The UMDNJ report noted Plaintiff's First Dx Axis I was "296.32 'MAJOR DEPRESSIVE DISORDER, RECURRENT MODERATE," A.R. 307, and detailed Plaintiff's history of past suicide attempts. A.R. 308.

On March 20, 2007, Plaintiff was admitted to the emergency room at St. Peter's Hospital in New Brunswick, New Jersey. A.R. 247-305. Plaintiff's chief complaint was depression, which she described as moderate. A.R. 248. A social worker, James Seymore, noted in a progress note that Plaintiff reported "chronic depression and anxiety [sic] for a long time" and that her

---

[1] The medical records indicate that, prior to the earliest records provided to the Court, Plaintiff had been previously evaluated by UMDNJ on August 11, 2005. A.R. 307.

"symptoms [were] not unlike Major Depressive Disorder, Recurrent, Moderate and Anxiety Disorder."  A.R.  302-03.  Plaintiff was diagnosed with depression and anxiety, A.R. 289, but was discharged on March 21, 2007, before undergoing a recommended psychiatric evaluation.  A.R. 293-94.

On March 27, 2007, Plaintiff was evaluated at UDMNJ by Carolyn Armencia, M.D.  A.R. 311-24.  Plaintiff's chief complaint was that she gets "stressed out" and has "anxiety problems." A.R. 311.  Dr. Armenica diagnosed Plaintiff with "chronic depression" and recommended individual therapy weekly and medication evaluation and management.  A.R. 315, 318.  Dr. Armencia's  treatment  plan,  A.R.  319-24,  listed  Plaintiff's  "primary  problem"  as "depression/anxiety."  A.R. 319.

On July 6, 2011, Plaintiff was admitted to the Emergency Room at Robert Wood Johnson University Hospital.  A.R. 325-28.  Plaintiff's chief complaint was listed as "anxiety and nausea," A.R. 325, which she experienced while in a court proceeding for a motor vehicle matter.  A.R. 326.  Plaintiff's weight was recorded as 120kg.  A.R. 326.  Plaintiff's symptoms had subsided by the time she arrived, but she reported a history of such incidents A.R. 326.  She was in mild emotional distress, but was released with no medication and referred to her primary care physician. A.R. 325-28.

In August 2011, Plaintiff sought mental health treatment for depression and anxiety at UMDNJ.  A.R. 332-55.  Plaintiff stated that her cause for return was depression and anxiety.  A.R. 332.  Plaintiff attributed her depression to being homeless and not having a job, among other stressors A.R. 332.  Plaintiff admitted to marijuana use two to three times per week, most recently two days earlier.  A.R. 332.  Plaintiff had been staying with an aunt until recently A.R. 332.  She took no medication, A.R. 333, was noted as obese, and was motivated to make behavioral changes,

A.R. 335.  In an initial evaluation by Nidagalle Gowda, M.D., Plaintiff was anxious and sad about her situation, but a mental status examination revealed that she was alert, fully-oriented, and well-groomed.  A.R. 337-38.  Plaintiff had variable judgment and poor insight, but her cognitive functioning revealed average intelligence, intact concentration and attention, and intact memory. A.R. 338-39.  Dr. Gowda diagnosed Plaintiff with major depressive disorder (recurrent, moderate), problems with learning, a history of past noncompliance, an anxiety disorder, episodic cannabis abuse, and impulse-control disorder.  A.R. 336, 339.

On September 7, 2011, Plaintiff returned for an examination by Dr. Gowda.  Dr. Gowda noted that Plaintiff was well kept, well dressed, and had good hygiene.  A.R. 348.  A mental status examination revealed that Plaintiff was calm and cooperative, with normal speech, appropriate affect, and grossly intact cognition.  A.R. 348.  Her attention, concentration, memory, insight, and judgment were all fair.  A.R. 348.

Also on that same date, Dr. Gowda completed a form in connection with Plaintiff's application for state welfare benefits.  A.R. 329-30.  Dr. Gowda noted Plaintiff's diagnoses of major depressive disorder, anxiety, a learning disorder, and an impulse control disorder. A.R. 329. Dr. Gowda assessed Plaintiff with limited cognition, attention, social functioning, and living skills. A.R. 329.  Dr. Gowda concluded that Plaintiff could participate part-time in a program activity or employment but would be disabled from September 7, 2011 to March 7, 2012.  A.R. 330.

On September 14, 2011, when Plaintiff returned to pick up her welfare benefits paperwork, Dr. Gowda indicated that Plaintiff appeared healthy, calm, cooperative, relaxed, and well groomed. A.R. 375.  Plaintiff reported that she had no medical conditions, but had been noncompliant with primary care follow up.  A.R. 375.  A mental status examination revealed that she was fully oriented and her mood was good.  A.R. 375.  Dr. Gowda indicated that Plaintiff had distress due

to multiple social stressors, but she denied suicidal ideation.  A.R. 375.  Plaintiff's cognitive functions were grossly intact and her concentration, attention, memory, insight, and judgment were fair.  A.R. 375.  Plaintiff's impulse was under control and she was in no eminent danger to herself or others.  A.R. 375.  Dr. Gowda assessed Plaintiff with depressive disorder, rule out marijuana abuse, adjustment disorder, and multiple psychosocial stressors. A.R. 376.  He indicated that Plaintiff was functioning at a baseline level without crisis and reinforced the importance of attending individual and group treatment to improve her insight and build coping skills.  A.R. 376.  He also reinforced healthy living habits, including a healthy diet, exercise, and abstinence from illegal drugs and alcohol.  A.R. 376.

Plaintiff returned on September 18, 2011, two weeks later, for a medication reassessment for dysthymia and poly-substance abuse. A.R. 381.  She reported that she was "okay" and able to sleep with medication. A.R. 381.  She admitted that she was smoking marijuana and denied using cocaine, but her recent blood work was positive for marijuana and cocaine use. A.R. 381.  Dr. Gowda indicated that Plaintiff appeared to be calm, cooperative, and relaxed, with a bright affect and a "friendly/silly" mood. A.R. 381.  He advised Plaintiff to enter a drug rehabilitation program. A.R. 381.  Upon mental status examination, Plaintiff appeared to be healthy, was fully oriented and well dressed, had good hygiene, and was cooperative, fairly reliable, and friendly.  A.R. 381.  Her affect was appropriate and her mood was congruent with affect, but Dr. Gowda indicated that Plaintiff continued to have distress due to multiple psychosocial stressors.  A.R. 382.  She had limited insight and judgment, but her impulse was under control.  A.R. 382.

On January 30, 2012, Plaintiff attended a group therapy session. A.R. 389.  On January 31, 2012, at a return visit for individual therapy, Plaintiff reported that she was not feeling depressed, although she was not able to sleep at night. A.R. 386.  She disliked her living situation

5

and wanted to move.  A.R. 386.  A mental status examination revealed that she was fully oriented and her speech was logical, coherent, and goal directed.  A.R. 386.  Her affect was full range and bright, with a congruent mood.  A.R. 386.  The social worker, Keith Carter, indicated that Plaintiff appeared to continue to have mood instability, possibly due to her absence from treatment for some time or her continued use of marijuana.  A.R. 386.  At a group therapy session on February 13, 2012, Plaintiff complained of insomnia but admitted that reduced caffeine intake had helped and her sleep had improved.  A.R. 388.

On June 15, 2012, Plaintiff was examined by Dr. Joyce F. Schneiderman at the Eric B. Chandler Health Center, based on Plaintiff needing care for headaches.  A.R. 410.  Plaintiff's weight was noted as 225 lbs.  A.R. 410.

On February 1, 2013, Plaintiff was examined again by Dr. Schneiderman, for complaints regarding abdominal pain and minimal urination.  A.R. 408.  Plaintiff's weight was noted as 235 lbs.  A.R. 408.  On February 20, 2013, Plaintiff underwent a sonogram of her abdomen.  A.R. 402. The sonogram report indicated "[m]inmally increased echogenicity of the liver [which] may be compatible with fatty infiltration.  Otherwise unremarkable exam."  A.R. 402.

On March 1, 2013, Plaintiff was examined by Dr. Schneiderman.  A.R. 399-401.  Plaintiff reported no pain or fatigue, but was screened for depression, and complained of a "sore right flank" which "comes and goes" and was "not severe."  A.R. 400.  Plaintiff's obesity was noted as a problem.  A.R. 401.

On April 26, 2013, Plaintiff sought treatment for low back pain of several weeks duration at the Eric B. Chandler Health Center. A.R. 393.  Dr. Schneiderman performed a straight low-raising test, which was positive, but a musculoskeletal examination revealed that Plaintiff's gait was "okay" and that she could stand on her heals and toes.  A.R. 394.   Plaintiff was diagnosed

with lumbar radiculopathy, prescribed medication for pain, and referred for physical therapy A.R. 394.  Plaintiff was measured as 64" tall and weighed 228 lbs.  A.R. 392.

On June 19, 2013, Calvin Chatlos, M.D., a psychiatrist at Rutgers University Behavioral Health Center ("UBHC"), completed a form for Plaintiff's application for disability benefits.  A.R. 416-23.  Dr. Chatlos indicated that he had treated Plaintiff monthly for medication management and every two to three weeks for therapy.  A.R. 416.  He noted Plaintiff's diagnoses as mood disorder/cannabis dependence, sciatica, and a GAF score of 50.  A.R. 416.  He indicated that Plaintiff experienced significant anxiety, depression, and disorganization, and was overwhelmed daily with depression and anxiety.  A.R. 416.  On a list of symptoms, Dr. Chatlos endorsed sleep and mood disturbance, emotional lability, substance dependence, recurrent panic attacks, psychomotor agitation, difficulty thinking or concentrating, social withdrawal or isolation, and decreased energy.  A.R. 417.  When asked to identify clinical findings that demonstrated the severity of Plaintiff's impairment and symptoms, Dr. Chatlos indicated that Plaintiff was unable to plan solutions due to anxiety and had poor follow-through.  A.R. 417).  He indicated that Trazadone (antidepressant medication) and Celexa (anti-anxiety medication) caused lethargy and sedation.  A.R. 418.  He concluded that Plaintiff would be absent from work more than three times per month.  A.R. 419.

In an assessment of Plaintiff's mental ability to do unskilled work, Dr. Chatlos assessed Plaintiff with a fair ability to understand, remember, and carry out very short and simple instructions, sustain an ordinary routine without special supervision, perform at a consistent pace without unreasonable rest periods, and accept instructions and respond appropriately to supervisory criticism.  A.R. 420-21.  He assessed Plaintiff with a poor ability to remember work-like procedures, maintain attention for two-hour segments, work in coordination with others

7

without distraction, make simple work-related decisions, complete a normal workday or workweek without interruption, ask simple questions or request assistance, get along with coworkers or peers, deal with normal work stress, be aware of normal hazards, and take appropriate precautions. A.R. 420-21. Dr. Chatlos concluded that Plaintiff would have a fair ability to maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, and travel in unfamiliar places by public transportation, but a poor ability to interact appropriately with the general public. A.R. 421. He assessed Plaintiff with marked and extreme limitations in areas of functioning under the listing of impairments for mental disorders under the agency's regulations. A.R. 422.

On July 10, 2013, Dr. Chatlos completed a form for Plaintiff's application for state welfare benefits. A.R. 424-25. He noted that he had last examined Plaintiff one month earlier. A.R. 424. Dr. Chatlos identified a mood disorder and a learning disorder as the primary diagnoses that resulted in Plaintiff's incapacity to comply with the state welfare work program. A.R. 424. He then identified anxiety disorder and depression as her psychiatric disability. A.R. 424. Dr. Chatlos assessed Plaintiff with poor memory, organization, and planning, and unstable moods. A.R. 424. He concluded that she was unable to work and would be disabled from July 10, 2013 to September 1, 2014. A.R. 425.

**B.     Review of Disability Determinations**

On July 15, 2011, Plaintiff applied for social security disability insurance benefits and supplement security income, alleging disability beginning on August 1, 2009. A.R. 164-74. Plaintiff reported that she lived with friends (explaining that she lived "in between friend['s] places"). A.R. 210. When asked about her daily activities, she stated "I don't really do much. I try to find places to hang out." A.R. 210. However, Plaintiff acknowledged that she had no problems with personal care; she did not need special reminders to take care of personal needs or

take her medication; she was able to go out alone and either walked, rode in a car, rode a bicycle, or took public transportation; and she was able to shop in stores and pay bills. A.R. 211-13. When asked about her social activities, Plaintiff explained that she spent time with others, "sometimes just people I stay with . . . sometimes usually by myself." A.R. 214. She set alarms to remind herself of her appointments. A.R. 214. She denied having any problems getting along with family, friends, or neighbors, but explained that sometimes she liked to be by herself. A.R. 214. When asked to identify how her conditions affected her ability to function, Plaintiff reported that her memory and ability to understand, talk, concentrate, and complete tasks were affected. A.R. 215. She reported no effect on her ability to sit, stand, walk, lift, or perform postural activities. A.R. 215.

On October 21, 2011, the Social Security Administration determined that Plaintiff was not disabled based on depression, bi-polar disorder, or anxiety and denied her claim. A.R. 52-73; 86-101. Sharon Flaherty, Ph.D., a state agency psychologist, reviewed the medical and other evidence of record and concluded that Plaintiff had affective and anxiety disorders, but was able to perform the mental demands of unskilled work. A.R. 56-59. Specifically, Plaintiff was able to sustain memory, concentration, basic social interaction, and mental pace/persistence for simple, routine tasks. A.R. 57-59.

On May 1, 2012, the Social Security Administration denied Plaintiff's request for reconsideration, finding that Plaintiff indicated that her condition has not changed or worsened since the initial determination. A.R. 74-95; 103-08. On reconsideration, Ellen Garra, M.D., confirmed that although Plaintiff had affective and anxiety disorders, she was able to understand, remember, and follow short and simple instructions, learn and perform simple, routine tasks, follow a schedule, travel locally, and adapt to minor changes. A.R. 89-93.

### C.      Review of Testimonial Record

#### 1.      Plaintiff's Testimony

Plaintiff testified that she was last employed in 2009 as a cashier at a convenience attached to a gas station and that prior to that, she worked as a cashier at a liquor store.  A.R. 30.  Plaintiff stated that she was fired from her job at the liquor store because of her poor attendance, because she was not "doing what [she] was supposed to," and because she was accused of stealing, although no charges were brought against her.  A.R. 30-31.

Plaintiff testified that she would typically call out of her job once a week.  A.R. 42-43.  On those days, she explained that she called out: "[b]ecause I didn't feel like getting up.  I didn't want to get up.  I didn't feel like being around people.  I get that way sometimes.  I just don't feel like, I guess, I don't know, doing what I'm supposed to do."  A.R. 44.  Plaintiff stated that she still has similar days, and when they happen, she does "nothing" and spends the entire day in bed.  A.R. 44.  When questioned why her records indicated that she had over 30 different employers, all for jobs that lasted only short durations, Plaintiff stated that she "just lose[s] motivation I guess."  A.R. 39.  As Plaintiff explained:

> Q:      Do you get fired from the jobs or do you quit, or is [it] some of both?
>
> A:      Kind of both.  Like I might give up and then they don't want, they can fill the position with somebody who wants to work.  I've heard that before.
>
> Q:      When you say you give up, do you stop going in?
>
> A:      Sometimes.  Like I might miss a couple of days or something or call out.

A.R. 39.

Plaintiff testified that she began getting treatment for her depression in July or August of 2011, when she saw a therapist at UMDNJ.  A.R. 37-39.  Plaintiff stated that her therapist encourages her to socialize more often, A.R. 32-33, and has prescribed her medication for

depression.  A.R. 39-40.  Plaintiff testified that she does not hurt herself "too much" while on medication, and acknowledged that she had a problem with anxiety.  A.R. 40.  Plaintiff stated that she only "[s]ometimes" gets up, washes, and dresses herself, A.R. 40-41, and that she stays in five days a week, although she "would stay in all the time [i]f [she] could." A.R. 42; *see also* A.R. 44 ("I try to stay in the house all the time.").  Plaintiff lives in a rooming house, in a room by herself, where she is required to clean up after herself.  A.R. 41-42.

Plaintiff testified generally that she has had some legal troubles concerning her driver's license, A.R. 34-35, and denied having any issues with alcohol or drugs, A.R. 35.  However, she conceded that she has a history of using marijuana, which has decreased since she stopped working.  A.R. 36-37.

Plaintiff testified that she was 5' 4" tall and weighs 235 pounds.  A.R. 46.  When asked by the ALJ if she had any kind of physical problems, she responded "I just have sciatica."  A.R. 46. Plaintiff testified her sciatica began in April 2013, when she attempted to lift something heavy at her rooming house.  A.R. 46-47.  Plaintiff stated her sciatica limited her ability to stand for more than five minutes, and that she had no problems standing when she was a cashier prior to 2013. A.R. 46-47.  Plaintiff conceded that she has no other physical limitations, A.R. 47, and her attorney affirmatively disclaimed that she was claiming disability based on her sciatica due to its limited duration:

| | |
|---|---|
| ALJ: | All right, thank you.  Are you raising any physical, Counsel? |
| ATTY: | No, Your Honor. |
| ALJ: | Because of the duration, right? |
| ATTY: | Yes, Your Honor. |

A.R. 48.

2.      **Testimony of the Vocational Expert.**

Jackie L. Wilson testified as a Vocational Expert ("VE") at the hearing in this matter.  The VE testified that Plaintiff's previous work is classified as a retail sales clerk in the Dictionary of Occupation Titles ("DOT") # 290.477-014, which is a semi-skilled position in the light exertional range.  A.R. 49.

The ALJ presented the VE with the following hypothetical:  "assume the claimant could do light work, no more than occasional ladders, ropes, scaffolds, and no more than frequent ramps, stairs, balance, stoop, kneel, crouch, [and] crawl.  She can do simple routine work and that she should have no more than occasional contact with public or coworkers."  A.R. 49.  The VE testified that such a hypothetical individual could not perform Plaintiff's past relevant work, A.R. 49, but identified three positions in the national or regional economy that such an individual could perform with those restrictions:  (1) mail clerk, DOT # 309.687-026, which the VE testified exist in the northern New Jersey and metro New York areas in the amount of 6,183 and 70,976 nationally; (2) inserting machine operator, DOT # 209.685-018, which the VE testified exist in the amount of 7,170 regionally and 115,000 nationally; and (3) small parts assembler, DOT # 706.684-022, which the VE testified exist in the amount of 2,800 regionally and 235,901 nationally.  A.R. 50.

The ALJ then gave the VE a second hypothetical, with the same restrictions as the first, with the addition of being required to be absent three times a month.  A.R. 50.  The VE testified that such an individual could neither perform Plaintiff's past relevant work, nor find any work in the national or regional economy.  A.R. 50.

D.      **ALJ's Findings**

The ALJ issued a written decision on September 13, 2013.  A.R. 11-21.  The ALJ began by finding that Plaintiff met the insured status requirement of the Social Security Act to remain

12

insured through March 31, 2013.  A.R. 11, 13.  Next, the ALJ applied the standard five-step process to determine if Plaintiff had satisfied his burden of establishing disability.

First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 1, 2009, the alleged onset date, through her date last insured on March 31, 2013.  A.R. 13.

Second, the ALJ found that Plaintiff had the following severe impairments:  mood disorder, major depressive disorder, substance abuse, sciatica, obesity, and major depression.  A.R. 13-14.

Third, the ALJ found that Plaintiff does not have an impairment, or a combination of impairments, that meets or medically equals the severity of one of the listed impairments under the Act that would qualify for disability benefits.  A.R. 14-15.  With respect to Plaintiff's obesity, the ALJ noted that there was no specific medical listing explicable, and evaluated the impairment under the guidelines set forth in SSR 02-1p, including reference to listings 1.00Q (musculoskeletal system, effects of obesity), 3.00I (respiratory system, effects of obesity), and 4.00F (cardiovascular system, effects of obesity).  A.R. 14.  With respect to Plaintiff's mental impairments (alone and in combination), the ALJ determined that they do not meet or medically equal criteria of listings 12.04 ("Affective Disorders") and 12.09 ("Substance Addiction Disorders").  In making this determination, the ALJ also found that the "paragraph B" criteria were not satisfied because Plaintiff had only (1) a moderate restriction for activities of daily living; (2) moderate difficulties with social functioning; (3) moderate difficulties with concentration, persistence, or pace; and (4) no episodes of decompensation.  A.R. 15.  The ALJ also stated that she considered the "Paragraph C" criteria.  A.R. 15.

Fourth, the ALJ found that Plaintiff had the residual functional capacity to perform the exertional demands of light work as defined in 20 C.F.R. §§ 404.1567(b), with the exception that Plaintiff could "only occasionally climb ladders, ropes or scaffolds; frequently climb ramps/stairs,

balance, stoop, kneel, crouch and crawl; perform simple, routine work; and occasionally have contact with the public and coworkers.  A.R. 15-16.  In reaching this RFC determination, the ALJ extensively reviewed Plaintiff's statements concerning her physical condition, as well as his medical records concerning both her alleged physical and mental impairments.  *See* A.R. 16-20.

Fifth, the ALJ found that, taking into consideration Plaintiff's age, education, work experience, and residual functional capacity,[2] "there are jobs that exist in significant numbers in the national economy that the claimant can perform."  A.R. 20.  In reaching this determination, the ALJ relied on the testimony of a vocational expert that an individual with Plaintiff's age, education, past relevant work experience, and residual functional capacity could perform the following representative occupations:   mail clerk, DOT # 309.687-026 (6,183 regionally and 70,976 nationally; (2) inserting machine operator, DOT # 209.685-018 (7,170 regionally and 115,000 nationally); and (3) small parts assembler, DOT # 706.684-022 (2,800 regionally and 235,901 nationally).  A.R. 21.

The ALJ concluded that "the claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2009, through the date of this decision."   A.R. 21.  Accordingly, the ALJ denied Plaintiff's claims for disability insurance benefits and supplemental security income.  A.R. 21.

## II.   STANDARD OF REVIEW

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a

---

[2] The ALJ found that (1) Plaintiff was 32 years old on the alleged disability onset date, which is defined as a "younger individual" under 20 C.F.R. § 404.1563; (2) Plaintiff has "at least a high school education and is able to communicate in English"; and (3) the transferability of job skills was not material to her determination because Plaintiff was not disabled.  A.R. 20.

judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). While the court must examine the record in its entirety for purposes of determining whether the Commissioner's findings are supported by substantial evidence, *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978), the standard is highly deferential. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). "It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied*, 507 U.S. 924 (1993). Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence. *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the statutory insured status requirements. *See* 42 U.S.C. § 423(c). Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A); *see Plummer*, 186 F.3d at 427. An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous

15

work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Eligibility for supplemental security income requires the same showing of disability. *Id.* at § 1382c (a)(3)(A)-(B).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity." *Id.* at § 404.1520(a); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See* 20 C.F.R. § 404.1520(b); *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see Bowen*, 482 U.S. at 146-47 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id.* A claimant who does not have a severe impairment is not considered disabled. *Id.* at § 404.1520(c); *see Plummer*, 186 F.3d at 428.

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See id.* at § 404.1520(d); *see also Bowen*, 482 U.S. at 146-47 n.5. If the specific impairment is not listed, the

ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams*, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. § 404.1520(e); *Bowen*, 482 U.S. at 141. If the claimant is able to perform previous work, the claimant is determined to not be disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e); *Bowen*, 482 U.S. at 141-42. The claimant bears the burden of demonstrating an inability to return to the past relevant work. *Plummer*, 186 F.3d at 428. Finally, if it is determined that the claimant is no longer able to perform his or her previous work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." *Bowen*, 482 U.S. at 146-47 n.5; *Plummer*, 186 F.3d at 428. This step requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520(f). The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and not disabled. *Id.*

## III.    PLAINTIFF'S CLAIMS ON APPEAL

Plaintiff argues that the ALJ's failure to find that she had the severe impairment of anxiety constitutes reversible error which "infected" the rest of the ALJ's evaluation of her disability claim. This Court agrees, and remands to the ALJ for consideration of whether Plaintiff's anxiety disorder

was a "severe impairment" and, if so, what effect that severe (or non-severe) impairment had on her residual functional capacity and, ultimately, her ability to perform any job in the regional or national economy.

The inquiry into an impairment's severity at Step 2 of the sequential evaluation "is a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). An impairment or combination of impairments is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). The regulations define basic work activities as the abilities or aptitudes necessary to do most jobs. *Id.* at § 404.1521(b). Thus, an impairment is not severe if the evidence establishes only a slight abnormality that has no more than a minimal effect on an individual's ability to work. *Newell*, 347 F.3d at 546; *Mays v. Barnhart*, 78 F. App'x 808, 811 (3d Cir. 2003). "Reasonable doubts on severity are to be resolved in favor of the claimant." *Newell*, 347 F.3d at 547 (footnote omitted).

While an ALJ is entitled to weigh the credibility of the evidence presented to him, he must give some indication of the evidence he rejects and the reasons for rejecting that evidence. *See Fargnoli v. Halter*, 247 F.3d 34, 43 (3d Cir. 2001). Otherwise, the reviewing court cannot tell if "significant probative evidence was not credited or simply ignored." *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). "[A]n ALJ's complete disregard of an impairment at Step Two and in the remaining parts of the sequential analysis can constitute grounds for remand." *Pailin v. Colvin*, No. 10-4556, 2013 U.S. Dist. LEXIS 158100, *9-10 (E.D. Pa. Nov. 5, 2013) (citing *Rupard v. Astrue*, 627 F. Supp. 2d 590, 596 (E.D. Pa. 2009)). "This is especially true if the ALJ fails to consider any limitations caused by the omitted impairment during his RFC assessment." *Shaffer v. Colvin*, No. 14-1114, 2015 U.S. Dist. LEXIS 87317, *17 (W.D. Pa. July 6, 2015) (citation

omitted).

A review of the records indicates that all of the medical professionals that have examined Plaintiff, or reviewed her medical records, have either diagnosed Plaintiff with affective and anxiety disorders or concurred with those diagnoses[3]  *See* A.R. 56 (Sharon Flaherty, Ph.D.); A.R. 88-89 (Ellen Garra, M.D.); A.R. 289 (St. Peter's Hospital emergency room records); A.R. 319-24 (Carolyn Armencia, M.D.); A.R. 329, 336, 339 (Nidagalle Gowda, M.D.); A.R. 416, 424 (Calvin Chatlos, M.D.).  However, while the ALJ found that Plaintiff had the severe impairments of mood disorder and major depression and, therefore, considered the criteria for "affective disorders" in listing 12.04,[4] she did not state – one way or the other – whether Plaintiff's anxiety disorder constituted a severe impairment at Step 2.  A.R. 14.  Consequently, the ALJ did not consider the criteria for "anxiety related disorders" in listing 12.06[5] at Step 3, A.R. 14-15, or the impact of Plaintiff's anxiety disorder on the RFC, A.R. 15-19.

Given the unanimity of opinion among the medical professionals who examined Plaintiff and/or reviewed her medical records, the ALJ should have at least considered Plaintiff's alleged anxiety disorder at Step 2 of the sequential evaluation and, if she did not find that it constituted a severe impairment, explained why she rejected the medical evidence that Plaintiff suffers from

---

[3] The only exception appears to be Dr. Schneiderman, who examined Plaintiff for complaints regarding abdominal pain and low-back pain, A.R. 408, 393, but also screened Plaintiff for depression.  A.R. 400.

[4] "Affective Disorders:  Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation."

[5] "Anxiety Related Disorders: In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders."

anxiety disorder.  Because the ALJ failed to do so, her Step 2 determination is not supported by substantial evidence and the Court cannot interpret the ALJ's silence as a determination that Plaintiff's anxiety disorder was not a medically determinable impairment or that it was not "severe."  *See Rupard*, 627 F. Supp. 2d at 596; *Berrios-Vasquez v. Massanari*, No. 00-2713, 2001 U.S. Dist. LEXIS 11477, *26 (E.D. Pa. May 10, 2001) (remanding because "ALJ should have explicitly considered evidence of pancreatitis and peripheral neuropathy instead of deciding *sub silentio* that the impairments were not severe").  The ALJ likewise neither acknowledged nor discussed Plaintiff's anxiety disorder in her RFC analysis or otherwise in her opinion, A.R. 15-19, and, therefore, this omission was not "harmless."  *Shaffer*, 2015 U.S. Dist. LEXIS 87317 at *20-21; *see also See Social Security Ruling* ("SSR") 96-8p, 1996 SSR LEXIS 5 at *14 (S.S.A. July 2, 1996) (the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'" in assessing RFC); 20 C.F.R. § 416.945(a)(2) ("If you have more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 416.920(c), 416.921, and 416.923, when we assess your residual functional capacity.").  Therefore, remand is required for further consideration of Plaintiff's alleged anxiety disorder at Step 2 and the remainder of the sequential evaluation.

Having determined that remand is appropriate so that the ALJ will explicitly consider Plaintiff's alleged anxiety disorder in a new sequential evaluation, this Court will not address Plaintiff's remaining challenges that the ALJ did not properly consider her obesity at Step 3 of the analysis (or anywhere in the decision); that the ALJ's RFC was not adequately explained and contradicts the medical evidence in the record; and that the ALJ failed to take into account that the VE testified that Plaintiff could not perform any job if she needed to be absent three times a month.

**IV.     CONCLUSION**

For the reasons set forth above, I find that the ALJ's decision was not supported by substantial evidence in the record.   Accordingly, the ALJ's decision is remanded for further consideration of Plaintiff's alleged severe impairment of anxiety disorder in the sequential evaluation.   An appropriate Order shall follow.

Dated: April 26, 2016

/s/ The Honorable Freda L. Wolfson

United States District Judge